UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

    Case No. 18-cr-20085-02
    District Judge Paul D. Borman

MICHAEL DAVIS-D-2,

    Defendant.
_____/

**ORDER DENYING DEFENDANT MICHAEL DAVIS' MOTION TO SUPPRESS CELL PHONES AND DERIVATIVE EVIDENCE (ECF NO. 219, APRIL 20, 2021)**

**INTRODUCTION**

Defendant Michael Davis is a Co-Defendant in a Federal four-defendant murder-for-hire indictment. (ECF No.1.)

Defendant Davis' Motion requests this:

> Court to order suppression of three cell phones seized by Detroit Police Officers from Defendant Davis on two dates, March 8, 2017 and April 1, 2017, subsequent forensic extractions from the phones, and all derivative evidence. Davis has asked this Court to suppress because the officers' warrantless cell phone seizures were not made under authority of Davis' parole conditions and because they did not meet the Fourth Amendment standards of reasonableness.

(ECF No. 276, Defendant's Supplemental Brief, at PageID.1198-99, July 16, 2021.)

1

At Defendant's initial arrest and telephone seizure on March 8, 2017, Defendant's parole officer, Jennifer Wolf, accompanied Detroit Police Officers. Davis was arrested on two valid, outstanding state misdemeanor warrants; one from the Detroit 36th District Court, and the second from a Macomb County District Court. Defendant was also in violation of the requirement that he notify his parole officer of any change in residence. Wolf confirmed that Defendant was violating his parole requirement that he provide his residence address, when she saw him carry a suitcase from his car to that listed residence for the scheduled visit. Wolf also believed that Davis was a member of the A-1 Killers, and a Ceasefire Participant. Gov't Exh. 2, "Parole Notes," Gov't Response to Defendant's Motion to Suppress. (ECF No. 230-3, at PageID.945-46.)

The initial cell phone was sized and logged in as evidence at the Detroit Detention Center, where Defendant was booked that day, and where it remained until after April 5, 2018, when it was released to FBI Special Agent Scott Wheeler for a forensic examination pursuant to a Federal Search Warrant, for a forensic examination. Defendant is not challenging the Federal Search Warrant, that was the basis for Wheeler's subsequent receipt of the phone for the forensic examination. Davis never requested return of the phone.

On April 1, 2017, Detroit Police Officers arrested Defendant Davis at Henry Ford Hospital Detroit on two outstanding misdemeanor warrants. Davis had

2

entered the hospital for a shooting wound, under a false name, Melvin Wilkerson, who also had outstanding warrants. Two Detroit Police Officers arrived for a routine interview of a shooting victim, to seek details about the shooting for further investigation. Davis refused to provide them any information about the shooting. Davis provided them that same false name: Melvin Wilkerson. There were also outstanding warrants under the name Melvin Wilkerson. While the responding DPD Officers were there, DPD Sgt. Engel arrived and ordered the officers to arrest Wilkerson/Davis for the outstanding warrants, and to seize his two cell phones from a clear plastic hospital bag. Sgt. Engel also had information about Davis' possible membership in the A-1 Killers. Wilkerson/Davis' cell phones were booked as property in Detroit Police custody. As he was being transported to the Detroit Detention Center, Defendant Davis pointed out the location of his true identification documents, which he had thrown in the bushes on the hospital grounds, and they were seized.

    As of April 24, 2017, those two hospital-seized phones were in the possession of DPD as evidence. While DPD Detective Paytra Williams had at one time secured a search warrant for a DPD forensic examination of those phones, that search never occurred. The phones remained in Detroit Police custody, and were <u>not</u> searched by the DPD. Subsequently, the two "hospital phones" were transferred to FBI custody, and a Federal search warrant was obtained for

3

examination/evidence extraction from the phones, prior to any examination of those phones.

The Government seeks to introduce at trial extractions from the three cell phones that were seized from Defendant by DPD authorities during three searches, and then transferred to Federal law enforcement officers; the first phone seized by an MDOC parole officer and accompanying Detroit Police Officers, and the second and third phones having been seized by the Detroit Police Officers at the hospital. All three phones were the subject of Federal search warrants prior to any Federal extractions. The second and third cell phones were the subject of a separate Federal search warrant than the first. All three cell phone extractions are the subject of the Defendant's Motion to Suppress.

On June 25, 2021, the Court held an in-person evidentiary hearing on Defendant's Motion to Suppress. Government testimony was received from:

1. Michigan Department of Corrections Parole Officer Jennifer Wolf;
2. Detroit Police Sergeant Nathan Miller;
3. Detroit Police Sergeant Miguel Benavides;
4. Former Detroit Police Detective Paytra Williams (presently a Special Agent with the State of Michigan Attorney General).

## DISCUSSION

Defendant Michael Davis had been incarcerated within the Michigan Department of Corrections (MDOC) beginning on December 9, 2013, based on convictions for various state firearms offenses. On April 28, 2016, Davis was

released on parole, and was an MDOC parolee during the time period relevant to the instant Motion. In order to be released from prison under parole status, Davis was required to sign a written consent to a search of his person and property upon demand by a peace officer or parole officer. He did sign such a form.

At the conclusion of the evidentiary hearing and argument, the Court ordered the parties to read this Court's decision in *United States v. Leander Mann*, No. 17-cr-20644, 2018 WL 3036404 (E.D. Mich. June 19, 2018), and file supplemental briefing on the relevance, or not, of that holding, also involving a State of Michigan parole officer search of a parolee. In *Mann*, as in the instant case, local police officers accompanied a parole officer making a compliance check due to the parole officer's concerns over the parolee's possible criminal conduct.

## ANALYSIS

MDOC special conditions for parole include:

> 4.2    Written consent to search the parolee's person and/or property, MCL 791.236(19): I voluntarily consent to a search of my person and property upon demand by a peace officer or parole officer. If I do not sign this written consent, I understand that my parole may be rescinded or revoked.

Gov't Exh. 1, "Parole Order," Gov't Response to Defendant's Motion to Suppress. (ECF No. 230-2, at PageID.943.) Mich. Comp. Laws § 791.236, in turn, governs the issuance of parole orders under Michigan law and sets forth a number of conditions that "shall" be contained in a parole order, including the condition

contained in Mann's parole order requiring a parolee to consent to a search of his person or property "upon demand:"

> The parole order shall require the parolee to provide written consent to submit to a search of his or her person or property upon demand by a peace officer or parole officer. The written consent shall include the prisoner's name and date of birth, his or her physical description, the date for release on parole, and the ending date for that parole. The prisoner shall sign the written consent before being released on parole. The department shall promptly enter this condition of parole into the department's corrections management information system or offender management network information system or into a corresponding records management system that is accessible through the law enforcement information network. Consent to a search as provided under this subsection does not authorize a search that is conducted with the sole intent to intimidate or harass.

Mich. Comp. Laws § 791.236(19).

## CONCLUSION

The Court concludes that, given the legitimate concerns about the conduct of parolee, Defendant Davis, it was essential that peace officers accompany the parole officer on the check. The Court further notes that under MDOC parole condition 4.2, and Michigan Compiled Law Ann. §791.236, Parolee Davis had consented to searches by peace officers or parole officers, without any restrictions, other than harassment. This applied as well to arrests and searches by peace/police officers, such as those that occurred at the hospital.

Defendant's counsel noted in his final argument at the June 25, 2021 Evidentiary Hearing, that Defendant was arrested at the hospital on outstanding warrants. The Court notes that the evidence established that his two phones, contained in a clear plastic hospital bag, were seized pursuant to orders of Sgt. Engel, who had come to the hospital, aware of the outstanding warrants for Defendant's arrest, and his possible involvement with the A-1 Killers gang.

In this Court's prior parole violation case decision, Defendant Leander Mann's motion to suppress the evidence seized on a parole search was denied after an evidentiary hearing, and supplemental briefing, "because the search, conducted pursuant to the 'upon demand' search condition in Mann's Parole Order, did not violate the Fourth Amendment." *Mann,* 2018 WL 3036404, at *1. The Court finds that the seizures of Defendant Davis' cell phones and the subsequent extractions did not violate the Fourth Amendment.

An MDOC prisoner who seeks to conclude his sentence on parole status is required to sign a Parole Order containing this special condition, in order to be released from prison.

This Court finds support for its denial of Defendant's Motion to Suppress in the Supreme Court decisions, *Samson v. California*, 547 U.S. 843 (2006), and *United States v. Knights*, 534 U.S. 112 (2001), which concluded that parolees have severely diminished privacy expectations by virtue of their status alone. *Samson* at

7

850-51, and *Knights*, which found a "significantly diminished reasonable expectation of privacy based on the acceptance of a clear and unambiguous search condition." *Knights* at 120. *Accord*, *United States v. Smith*, 526 F.3d 306, 308 (6th Cir. 2008); *United States v. Tessier*, 814 F.3d 432 (6th Cir. 2016) which stated:

> Finally, as in *Knights*, 534 U.S. at 116-18, 122 S.Ct. 587, it cannot be argued that the suspicionless search in this case did not serve legitimate law enforcement and/or probationary purposes.

In the instant case, the basis for the March 8, 2017 compliance check was because Defendant Davis had outstanding warrants, was thought to be a member of the A-1 Killers and a Ceasefire participant, and further, as revealed prior to the entry of his place of residence, his violation of his condition that required notice to his parole officer of his place of residence.

The basis for the April 1 seizure, was (1) Davis being shot, (2) providing an alias "Melvin Wilkerson" to the hospital and to the responding police officers investigating a hospitalized shooting victim, and (3) the fact that "Melvin Wilkerson" also had outstanding warrants. When Sgt. Engel, a superior officer, learned of the shooting, she had (1) background information about Defendant's potential involvement with the A1 Killers, and (2) was aware that he had outstanding warrants, and (3) that he provided an alias name, and she came to the hospital and ordered the officers to arrest Davis and seize his two phones.

8

The Court finds significant that federal officers in the instant case sought and received initial search warrant approval prior to the extraction of information on all three cell phones.

The Court further concludes that Defendant Davis' diminished expectation of privacy applied equally to the seizure and search of his seized three cell phones in this case. *See*, *United States v. Pacheco,* 884 F.3d 1031, 1040-42 (10th Cir. 2018). The Court notes, that to search a phone, there must be a seizure, and while Davis' special parole references "searches," one cannot search a phone unless it is first seized, and in possession of the searching authority.

The Court also finds it relevant that:

(1)  Defendant Davis does not allege that the federal search warrants obtained for the phones seized on March 8 and April 1, lack probable cause.

(2)  Defendant never sought return of the seized cell phones.

Finally, there is no evidence before the Court that the search was conducted for some clearly improper purpose, such as harassment. *United States v. Smith*, 526 F.3d 306, 308 (6th Cir. 2008).

Accordingly, the Court DENIES Defendant's Motion to Suppress.

SO ORDERED.

DATED:  August 6, 2021          s/Paul D. Borman
                                PAUL D. BORMAN
                                UNITED STATES DISTRICT JUDGE