UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

MICHAEL DAVIS-D-2,

    Defendant.
                        /

Case No. 18-cr-20085-02
District Judge Paul D. Borman

**ORDER DENYING DEFENDANT MICHAEL DAVIS' MOTION FOR RECONSIDERATION (ECF NO. 279) OF COURT ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS CELL PHONES AND DERIVATIVE EVIDENCE (ECF NO. 219)**

## BACKGROUND

Defendant Michael Davis is a Co-Defendant in a federal four-defendant murder-for-hire indictment. (ECF No. 1.) This Motion relates to the seizure and continuing possession of three cell phones by State of Michigan and City of Detroit officers, and the subsequent extraction of information from them over a year later after their seizure from the Detroit Detention Center by federal agents based upon newly-secured federal search warrants. The Government intends to introduce the cell-phone extractions into evidence at trial.

On August 6, 2021, subsequent to an evidentiary hearing (ECF No. 281, transcript), this Court denied Defendant Michael Davis' Motion to Suppress. (ECF No. 278.)

1

On August 13, 2021, Defendant filed a Motion for Reconsideration of that Order. (ECF No. 279.) On August 30, 2021, pursuant to the Court's request, the Government filed a Response to Defendant's Motion for Reconsideration. (ECF No. 282.) On September 9, 2021, Defendant filed a Reply. (ECF No. 283.) On September 10, 2021, the Court struck Defendant's Reply (ECF No. 284) based upon Local Court Rule 7.1(h)(2)--"No Response and No Hearing Allowed. No response to the motion and no oral argument are permitted unless the Court orders otherwise." The Court did not request a reply.

Local Rule 7.1(h)(3) states:

> (3)  **Grounds**. Generally, and without restricting the court's discretion, the court will not grant motions for rehearing or reconsideration that merely present the same issues ruled upon by the court, either expressly or by reasonable implication. The movant must not only demonstrate a palpable defect by which the court and the parties and other persons entitled to be heard on the motion have been misled but also show that correcting the defect will result in a different disposition of the case.

Defendant's principal assertion in his Motion for Reconsideration is that the Court's ruling did not address whether there was a "constitutionally unreasonable delay in obtaining and using a [federal] search warrant to examine Defendant Davis' cell phones…that there is a 'temporal limitation of the Fourth Amendment's

2

reasonableness requirements.'" (ECF No. 279, at PageID.1237-38.) Defendant is not challenging the federal search warrants for the phones.

Citing to the Second Circuit opinion *United States v. Smith*, 967 F.3d 198 (2$^d$ Cir. 2020), Defendant contends that the relevant factors for the Court to consider in determining whether police have waited an unreasonable amount of time before seeking a search warrant include:

"(1)   the length of delay;

(2)   the importance of the seized property to the defendant;

(3)   whether the defendant had a reduced property interest in the seized item; and

(4)   the strength of the state's justification for the delay."

Defendant contends that the Government's delay is unreasonable and violative of the Fourth Amendment, and that the Supreme Court decision in *United States v. Leon*, 104 S.Ct. 3405 (1984) should not apply to prevent introduction of the extractions, because the unreasonableness of the delay is patently obvious. (ECF No. 279, at PageID.1241.) In *Leon*, the Court declined to apply the exclusionary rule to suppress evidence seized in violation of the Fourth Amendment.

Defendant's Motion also asserts that this Court's opinion that Davis, as a parolee, had a severely limited or effectively non-existent right of privacy in his

3

cell phones, is based upon errors of fact and law--palpable defects--which, if corrected, would result in a different disposition of the Motion to Suppress. (*Id*.)

The Government's Response in Opposition notes that the residence phone seized from Defendant at his residence by his state parole agent on March 8, 2017, maintained in possession for a year, was subsequently provided to requesting federal agents, who then obtained a federal search warrant for the search/extraction of that phone on April 5, 2018. The federal agents were not aware that the Detroit Police Department (DPD) had seized his residence phone until March 22, 2018. At that time, the federal agents were conducting a detailed murder investigation potentially involving Davis, into all contacts he had with law enforcement. (ECF No. 282.) The Government adds that there was no federal involvement in the March 8, 2017 parole officer's house check, which resulted in the seizure of the phone: that was undertaken exclusively by the Michigan Department of Corrections (MDOC), Detroit Police Department (DPD) and Wayne State University officers:

> Federal agents only learned of the details of the March 8, 2017 seizure by reviewing reports of every police contact that appeared in LEIN for Davis. Federal agents then obtained a search warrant for the residence phone approximately two weeks after they became aware of its seizure.

(*Id*. at PageID.1434.)

4

The second and third phones were seized by the DPD from Davis at the hospital he entered on April 1, 2017--under an alias--Melvin Wilkerson--after being injured in a shooting. Defendant was still on parole. There were outstanding arrest warrants in the name of Melvin Wilkerson.

DPD Sgt. Miguel Benavides testified that the officers had taken possession of Davis' personal possessions, which included his cell phones and identifying items, when he was released from the hospital and taken into their custody for outstanding arrest warrants in the name of Melvin Wilkerson.

He also testified that even though Defendant Davis ultimately told them that his true name was Michael Davis on the way to the Detroit Detention Center (DDC), Benavides was not 100 percent sure who it was he had in custody: "I'm not 100 percent sure. Not until fingerprint clearance came back." (ECF No. 281, Evidentiary Hearing, at PageID.1348.) He further testified that in addition to the cell phones being placed on evidence, "His wallet and identification should also have been placed on evidence as well. We didn't know if it was him or not. He already gave us misleading information about his name." (*Id.*)

While the Federal Government concedes that an interim DPD search warrant for the two hospital phones seized by the DPD lacked probable cause, it contends this should not be a factor in the Court's analysis of the subsequent Federal 2018 seizure of the phones and valid extractions based on valid federal search warrants.

5

The Government contends that there is no basis to suppress the DPD officers' seizures of the two hospital phones while (1) Davis was on parole, <u>and</u> (2) had checked into the hospital under an alias (Wilkerson). (*Id*. at PageID.1435.) Thereafter, federal agents secured search warrants for the two hospital phones on March 15, 2018, April 5, 2018, and September 17, 2018. The Government reasons that "both Davis and the two hospital-seized phones were in a static state…and any delay in securing warrants for the residence phone and two hospital phones did not offend the Fourth Amendment and was not constitutionally unreasonable." (*Id*. at PageID.1435-36.)

    The Government Response concludes that any delay in obtaining search warrants for the three phones was not constitutionally unreasonable:

> First, Davis had only a minimal possessory interest in the phones. Davis has been in continuous custody ever since the two hospital phones were seized and he has been in custody for all but 18 days since the residence phone was seized. As a result, Davis would not have had access to the two hospital phones during the delay and he would not have had access to the residence phone for all but 18 days of the delay because detention facilities do not permit personal cell phone usage.

(*Id*. at PageID.1437-38.) A second reason that the Government proffers to the Court to deny Defendant's Motion is that "Davis never requested return or transfer of any of the phones." (*Id*.)

6

A third reason that the Government proffers is that seizure of the phones did not affect Davis' liberty interests--he was incarcerated and could not possess phones.

A fourth reason that the Government proffers is that "the minimal nature and quality of the intrusion on Davis' Fourth Amendment interests in the two hospital phones was substantially outweighed by the importance of the governmental interests here" and because the DPD, who had possession of the phones, was conducting an investigation into the murder of Ramone Dotson, and Davis was a suspect. (*Id*. at PageID.1440.)

Finally, the Government contends that "Even if there was a constitutional violation, suppression is not the appropriate remedy":

> The purpose of the exclusionary rule under the Fourth Amendment is to deter police misconduct and "applies only if the police have violated the Constitution deliberately, recklessly, or with gross negligence, or if a constitutional violation is the product of recurring or systemic negligence." *Herring v. United States*, 555 U.S. 135, 144, 129 S.Ct. 695, 702 (2009).
>
> Here, the exclusionary rule's deterrence benefits do not outweigh its substantial costs in this case. The cell phones provide pertinent evidence in multiple serious violent crime investigations. To suppress the evidence would be to "ignore reliable, trustworthy evidence bearing on guilt or innocence." *United States v. Berroa*, 2021 WL 149254 at *6 (D. Mass., Jan. 15, 2021), *United States v. Blanchard*, No. CV 19-CR-10298-RWZ-1, 2021 WL 2458200, at *4 (D. Mass. June 16, 2021).

(*Id*. at PageID.1441.)

The Government concludes that the Court did not commit "mistakes of fact in the Court's Order that would result in a different disposition of the matter," as to:

1. Davis' change of residence. The fact that he was not formally violated for that doesn't mean that the violation Parole Agent Jennifer Wolf testified to did not occur.[1]

2. As to the lawful seizure of the two cell phones at the hospital, the basis for the seizure was Davis (1) being shot, (2) providing an alias 'Melvin Wilkerson' to the hospital and the responding police officers investigating a hospitalized shooting victim, and (3) the fact that 'Melvin Wilkerson' also had outstanding warrants. (ECF No. 278, PageID.1232.)

(*Id*. at PageID.1445.)

---

[1] The Court notes Parole Agent Wolf's testimony at the evidentiary hearing that Davis violated his parole condition that he live at the Holcomb Street address provided to her. (Evidentiary Hearing, June 25, 2021, ECF No. 281, at PageID.1268-1277):

> Q. So there was some decision by somebody that Mr. Davis was not going to be violated for any possible terms of his parole conditions?
> A. Yes.
> Q. Okay. Is that the same thing as Mr. Davis not having committed any parole violations?
> A. No.

(*Id*. at PageID.1276.) The Court credits Officer Wolf's testimony.

8

## DISCUSSION

The Court finds relevant the Supreme Court decision in *Herring v. United States*, 129 S.Ct. 695 (2009), where Chief Justice John Roberts' majority opinion pointed out that "suppression is not an automatic consequence of a Fourth Amendment violation. Instead, the question turns on the culpability of the police and the potential of exclusion to deter wrongful police conduct." The Supreme Court opinion further stated:

> First, the exclusionary rule is not an individual right and applies only where it "results in appreciable deterrence." *Leon* [*United States v. Leon*, 104 S.Ct. 3405 (1984)]. We have repeatedly rejected the argument that exclusion is a necessary consequence of a Fourth Amendment violation. Instead we have focused on the efficacy in deterring Fourth Amendment violations in the future.
>
> In addition, the benefits of deterrence must outweigh the costs…The principal cost of applying the rule is, of course, letting guilty and possibly dangerous defendants go free--something that "offends basic concepts of the criminal justice system." *Leon*.
> …
> As we said in *Leon*, "an assessment of the flagrancy of the police misconduct constitutes an important step in the calculus" of applying the exclusionary rule.
> …
> To trigger the exclusionary rule, police conduct must be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system. As laid out in our cases, the exclusionary rule serves to deter deliberate, reckless, or grossly negligent conduct, or in some circumstances recurring or systemic negligence. The error in this case does not rise to that level.

This Court also finds relevant two 2021 decisions from the United States District Court in the District of Massachusetts, applying the Supreme Court's discussion of the exclusionary rule.

In *United States v. Berroa*, 2021 WL 149254 (D. Mass., Jan. 15, 2021), District Judge Allison Burroughs denied the defendant's motion to suppress evidence obtained from the search of his cell phone seized during a search of his apartment on March 13, 2019, where the officers did not apply for a search warrant for more than a year. Judge Burroughs noted the Second Circuit decision in *United States v. Smith*, 967 F.3d 198 (2$^d$ Cir. 2020), which held that a delay is unreasonable and violative of the Fourth Amendment, but had nevertheless declined to apply the exclusionary rule because the error by the police was due to isolated negligence, and because an objectively reasonable officer would not have known in light of existing precedent that the delay violated the Fourth Amendment. *Smith* at 211-213. The Second Circuit had considered four factors:

   (1) the length of the delay;

   (2) the importance of the seized property to the defendant;

   (3) whether the defendant had a reduced property interest in the seized items, and

   (4) the strength of the state's justification for the delay.

As to number 1, Judge Burroughs concluded that the 15-month period between the seizure and the warrant application was the relevant period of time for consideration.

As to number 2, Judge Burroughs noted that the defendant made no effort to retrieve the phone for 18 months.

As to number 3, the defendant's property interest in the phone, Judge Burroughs pointed out that the defendant had been in custody since his arrest and detention, could not have possessed his cell phone while being detained, and the government ultimately provided probable cause to search the cell phone.

As to number 4, Judge Burroughs found that while the government didn't provide justification for the 15-month delay, the prejudice to the defendant because of the delay was only marginal.

Judge Burroughs concluded that: "to grant defendant's motion would almost certainly be to ignore reliable, trust-worthy evidence bearing on guilt or innocence," citing *Davis v. United States*, 564 U.S. 229, 237 (2011), and that the police did not exhibit deliberate reckless, or grossly negligent disregard for Fourth Amendment rights.

In *United States v. Blanchard*, 2021 WL 2458200 (D. Mass, June 16, 2021), District Judge Rya Zobel found that a four-month delay in obtaining a search warrant for a seized phone was not unreasonable, noting that defendant had a

11

diminished possessory interest in her phone: she never asked for the return of her phone, nor could she have because she had been incarcerated since the date the phone was seized, <u>and</u>, given the eventual transfer of the case from state to federal authorities, the four-month delay was not unreasonable. Citing *Berroa,* the district judge held that even if the four-month delay was unreasonable, it did not apply the exclusionary rule because the rule's benefits do not outweigh its substantial costs in this case--ignoring reliable trustworthy evidence bearing on guilt or innocence.

The Court adopts that conclusion in the instant case involving Defendant Davis. This Court declines to apply the exclusionary rule.

The Court notes the Sixth Circuit decision in *United States v. Fletcher*, 978 F.3d 1009 (6th Cir. 2020), dealing with a probationer defendant, where the court granted his motion to suppress a cell phone search by a probation officer who did not have reasonable suspicion to search his cell phone, <u>and</u> critically, the defendant's probation agreement did not authorize the search. The *Fletcher* majority opinion noted that while the privacy interest of a probationer has been significantly diminished, it is still substantial, <u>and</u> differentiated his case from that of a parolee, "Fletcher's expectation of privacy is greater than that of a parolee, *see Samson v. California*." (*Id*. at 1018.)

The Court also notes the Ninth Circuit decision in *United States v. Johnson*, 875 F.3d 1265 (9th Cir. 2017) that dealt with a warrantless search of a parolee's cell

12

phone: the judicial panel included Sixth Circuit Judge Eugene Siler. The Ninth Circuit noted:

> [T]he government's interest in supervising parolees is substantial. *Samson v. California*, 126 S.Ct. 2193 (2006). Requiring officers to obtain a warrant before searching parolee's cell phones would often undermine the state's ability to supervise effectively thousands of parolees and prevent concealment of criminal conduct as in the case here.

(*Id*. at 1274.)

> Here, at the time of the cell phone search, officers knew Johnson had a violent criminal history, and had reason to believe his cell phone contained evidence of serious parole violations…there was no evidence showing that the officer's purpose in trying to determine what had happened was "arbitrary, capricious, or harassing."

(*Id*. at 1275.)

Defendant Johnson had also alleged that his Fourth Amendment rights were violated because the phones seized in February 2014 were searched until 2014 and 2015. The Ninth Circuit held:

> We hold the delays in searching Johnson's phone were not unreasonable. Johnson had reduced privacy interests in his phone given his parolee status, and Johnson never sought return of his phone while he was in continuous custody since he was arrested…The government obtained the phone lawfully, and there is no evidence the delays were the result of dilatory tactics by the state.

(*Id*. at 1276.)

13

The Court concludes that in the instant case, there was no Fourth Amendment violation, but that even if there was a Fourth Amendment violation, the Court would not apply the exclusionary rule.

Accordingly, the Court DENIES Defendant's Motion for Reconsideration, finding no palpable defects, or errors of law or facts which, if corrected, would result in a different disposition of this case.

SO ORDERED.

DATED: September 15, 2021          s/Paul D. Borman
                                   PAUL D. BORMAN
                                   UNITED STATES DISTRICT JUDGE