UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

                                            Case No. 18-cr-20085
                                            District Judge Paul D. Borman

MICHAEL DAVIS-D-2,

    Defendant.
_____/

**ORDER DENYING DEFENDANT MICHAEL DAVIS' MOTION TO DISMISS AND TO JOIN IN MOTION TO DISMISS FILED BY DEFENDANT DAVID ALLEN[1] (ECF NO. 298)**

Defendant Michael Davis filed this Motion to Dismiss on December 10, 2021.

Defendant Davis acknowledges "that stipulated orders of continuance have been entered to comply with the Speedy Trial Act, 18 U.S.C. § 3161, et seq., but with the legitimate expectation that the Defendant would be afforded a fair trial required by the Sixth Amendment." (ECF No. 298, at PageID.1589-1590.)

Defendant Davis' brief sets forth, and does not object to, the stipulated speedy trial waiver orders in detail, entered from 2018-2022. (*Id.* at PageID.1590.) Defendant Davis adds: "Those [Orders] entered on June 30, 2020 and after

---

[1] Co-Defendant David Allen subsequently joined in this Motion. (ECF No. 300.)

1

incorporate reasons for delay relating to the COVID-19 pandemic." (*Id.*) The Court notes that counsel for Defendant Davis, Harold Gurewitz, and counsel for Defendant David Allen both signed the August 5, 2021 Stipulation and Order Excluding Delay Under the Speedy Trial Act. (ECF No. 77.)

Defendant Davis' claim in this Motion focuses on his claim relative to his Sixth Amendment constitutional right to speedy trial, discussed in the seminal Supreme Court decision in *Barker v. Wingo*, 407 U.S. 514 (1972). *Barker* set forth these four factors as a balancing test for a claim under this constitutional right:

    1.    Length of the delay.

    2.    Reason for the delay.

    3.    Defendant's responsibility to assert the right.

    4.    Prejudice to the defendant.

    1.    Defendant contends that the 47-month delay is presumptively prejudicial, but provides no specific facts to support prejudice. (*Id.* at PageID.1594.)

    2.    As to reasons for the delay, Defendant Davis notes that the initial delay "occurred, of course, because of the nature of the capital charges brought against the Defendant requiring a specialized investigation relating to the potential of death penalty authorization" which "came to a conclusion on August 26, 2019

when the government filed its Notice of a decision by the Attorney General not to seek the death penalty as to any defendant." (*Id.* at PageID.1594.)

Delay also occurred when Defendant Davis sought and received new counsel. New counsel Harold Gurewitz proceeded to file three pretrial motions, one of which required an in-Court evidentiary hearing. In-court hearings were not permitted in this Court until June 2021 because of the Court's closure due to the COVID-19 pandemic. After the extensive in-court hearing, the Court required post-hearing briefing. The Court denied the Motion to Suppress on August 6, 2021. (*Id.* at PageID.1595.)

3. The third *Barker* factor, Defendant's failure to timely assert his right to speedy trial, is explained away by Defendant as follows: he had a "reasonable expectation that delays during the pandemic would serve to protect his constitutional right to a fair trial, one at which he would be assured his right to pick a fair and impartial jury and to confront witnesses--without infringement of masking and social distancing." (*Id.* at PageID.1595.) This issue will be dealt with *infra* in number 4, as part of his prejudice claim.

4. As to prejudice to the Defendant, Defendant Davis proceeds to the core of his argument--that the trial masking and social distancing COVID procedures imposed by the United States District Court significantly and prejudicially diminish his rights to a fair trial. (*Id.*)

3

Defendant asserts that (1) the jury trial will be interrupted by COVID-related infections of participants. Defendant assumes, generally, that there will be a need for COVID-19 adjournments if a juror or participant tests positive for COVID-19. (*Id.* at PageID.1599) and (2) the masking requirements will prevent Defendant from having a full and fair opportunity to assess potential jurors during *voir dire*, and thereafter seated juror reactions of facial expressions throughout the proceedings. (*Id.* at PageID.1597.) Defendant contends that "social distancing requirements are also liable to make it extremely difficult for Defendant Davis to effectively view the jury and jurors' reactions during trial." (*Id.* at PageID.1598.)

Defendant also contends that the COVID-19 pandemic will prevent selecting a jury composed of a meaningful cross-section of the community--in particular, there will be underrepresentation of minorities and COVID-conscious people, producing jurors more likely to convict. (*Id.* at PageID.1601-02.)

## DISCUSSION

Defendant Davis' Motion to Dismiss filed on December 10, 2021 does not discuss, or even cite to, two relevant recent decisions; one from this district, and one other from the United States Court of Appeals for the Sixth Circuit, that discuss similar defendant assertions, both of which rejected those arguments: *United States v. Jay Schwartz*, Criminal Case No. 19-20451(E.D. Mich. Nov. 12,

2021) (Cleland, J); *United States v. Smith*, 2021 WL 5567267 (6th Cir. Nov. 29, 2021). The Court finds both decisions to be highly relevant and instructive.

Judge Cleland's opinion in *United States v. Jay Schwartz* cites the District Court's Administrative Order Nos. 20-AO-021; 20-AO-027 suspending jury trials, and then notes the restricted reopening of the Courthouse to jury trials with requirements for everyone who enters the Courthouse to wear facemasks, complete a health survey and social distance.

**FACEMASKS**

In *United States v. Schwartz*, at page 2, Judge Cleland notes that testifying witnesses will not wear a facemask, but a clear face shield to ensure that all have a clear view of their face. (*Id.* at fn. 2.) So too in the instant case.

Judge Cleland's courtroom contained clear plexiglass shields. So too in the instant case.

This Court is attaching Judge Cleland's opinion as Exhibit A.

**SOCIAL DISTANCING**

This Court will require social distancing, but as Judge Cleland noted: "The court sees no indication that the Constitution guarantees a right permitting a Defendant to observe all jurors' reactions *simultaneously*." (*Id.* at p. 5.) This Court concurs.

## COVID-19 ADJOURNMENT

This Court finds, as did Judge Cleland, that Defendant's presumption that COVID-19 issues will arise during the trial is speculative, although it is possible, but this Court's implementation of social distancing and masking requirements lessen Defendant's speculative concerns.

## FAIR CROSS-SECTION OF THE COMMUNITY

Defendant Schwartz's citation to two out-of-circuit district court decisions did not persuade Judge Cleland, and do not persuade this Court. As Judge Cleland noted: "Defendant has provided merely speculation that the composition of his jury *may* be materially changed by the ongoing pandemic." (*Id*. at p. 8.)

Judge Cleland concluded that because "Defendant has failed to plausibly lay out all the elements required for a jury composition claim, the court also rejects this argument." In the instant case, although Defendant Davis raises potential jury composition issues, this Court will deal with this issue during the jury selection process at the trial.

Judge Cleland concluded that trial should go forward as scheduled, as defendant's objection lacked merit. In fact, the case proceeded to trial and to verdict.

The recent decision of the United States Court of Appeals for the Sixth Circuit filed on November 29, 2021, before Defendant Davis' December 10, 2021

6

Motion, supported a district court's denial of the defendant's claims similar to Defendant Davis' Motion. *United States v. Smith*, 2021 WL 5567267 (6th Cir. Nov. 29, 2021).

This Court is attaching the Sixth Circuit opinion as Exhibit B.

In *Smith*, the Sixth Circuit rejected the defendant's claim that "requiring jurors to wear face masks over their noses and mouths violated his right to a fair trial because it prevented him from seeing jurors' full facial expressions during opening statements, closing arguments, and witness testimony." (*Id.* at p. 1.)

The Sixth Circuit opinion, authored by Judge Bernice Bouie Donald, started "with the axiomatic principal that a defendant is entitled to 'a fair trial, not a perfect one, because an error-free perfect trial is not humanly possible.' *United States v. Segines*, 17 F.3d 847, 851 (6th Cir. 1994)." Fast forward to 2021, Judge Donald wrote: "This principal applies with even greater force during a public health emergency, where protective measures such as plexiglass partitioners, disposable microphones, face masks, and social distancing upend traditional notions of what a 'normal' trial looks like. However, different does not necessarily mean unfair." (*Id.* at p. 1.)

The Sixth Circuit pointed out that "trial courts have inherent authority, and even 'grave responsibility' to determine what safety measures are necessary to protect the judge, court, personnel, the parties, the jurors, and the audience in and

7

around the courtroom." (*Id.* at p. 2.) This Court agrees, and will exercise its inherent authority to determine necessary safety measures throughout the trial.

## CONCLUSION

Accordingly, given this Court's agreement with the Sixth Circuit *Smith* decision and Judge Cleland's *Schwartz* decision, and for the reasons stated, *supra*, the Court DENIES Defendant Michael Davis' Motion to Dismiss due to violations of his Sixth Amendment right to a fair and public trial, and violations of the Speedy Trial Act.

SO ORDERED.

DATED: December 16, 2021

_____
PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

2021 WL 5283948
Only the Westlaw citation is currently available.
United States District Court, E.D. Michigan, Southern Division.

UNITED STATES of America, Plaintiff,
v.
Jay SCHWARTZ, Defendant.

Case No. 19-20451
|
Signed 11/12/2021

**Attorneys and Law Firms**

Gene Crawford, U.S. Attorney, Michael J. Freeman, U.S. Attorney, U.S. Attorney's Office Northern District of Ohio, Toledo, OH, for Plaintiff.

Gerald J. Gleeson, II, Thomas W. Cranmer, Miller Canfield Paddock & Stone, PLC, Troy, MI, Jeffrey Alan Crapko, Miller Canfield, Detroit, MI, for Defendant.

## OPINION AND ORDER OVERRULING DEFENDANT'S OBJECTION TO PROCEEDING WITH JURY TRIAL DURING COVID-19 PANDEMIC

ROBERT H. CLELAND, UNITED STATES DISTRICT JUDGE

*1 Defendant Jay Schwartz was charged in July 2019 with three felonies—for violating 18 U.S.C. § 666(a)(2); 18 U.S.C. § 371; 18 U.S.C. § 2—for his alleged role in an expansive public corruption conspiracy in Macomb County, Michigan. After numerous delays, due principally to the Coronavirus Disease ("COVID-19"), on September 7, 2021 the court entered a *stipulated* order setting a trial date of November 12, 2021. (*See* ECF No. 61.) Only two days before the scheduled commencement of trial, Defendant has now filed an "Objection to Proceeding to Trial During Covid-19 Pandemic Conditions." (ECF No. 78.) Defendant has raised four arguments for why the trial cannot go forward at this time. The government has now filed a response opposing the objection. (ECF No. 81.) For the reasons provided below, the court will overrule Defendant's objection.

### I. BACKGROUND

Like other courts, operations at the Eastern District of Michigan were significantly impacted when the COVID-19 pandemic began to spread around the country in March 2020. On March 13, 2020, Chief Judge Denise Page Hood entered administrative orders indefinitely suspending all in-person proceedings and authorizing the use of video technology for certain hearings.[1] *See* Administrative Order Nos. 20-AO-021; 20-AO-027. Because jury trials were effectively barred by this order, a significant backlog of trial-ready cases accumulated throughout the District.

Following the wide availability of vaccinations for COVID-19, in September 2021, the Eastern District of Michigan reopened its courthouses and implemented additional procedures, facility upgrades, and social distancing policies to reduce the chance that COVID-19 will be spread within the facilities. As relevant here, every person who enters the courthouse must complete a health screening, wear a facemask, and socially distance.[2] *Eastern District of Michigan Policies and Procedures for Jury Trials*, https://www.mied.uscourts.gov/pdffiles/Policies_and_Procedures_for_Jury_Trials.pdf [https://perma.cc/JV9A-DNKZ] (last visited Nov. 10, 2021). In the Port Huron courthouse, plexiglass shields are mounted on the courtroom desks and elsewhere, and enhanced air filtration systems have been installed.

\*2 To reduce the odds that other jurors end up in "close contact"[3] with a juror who contracts COVID-19, the courtroom has been physically rearranged to promote proper social distancing between the masked jurors throughout a trial.



Image 1

As the image above illustrates, this rearrangement involved adding two extra rows of jurors in the well of the courtroom and a ninety-degree repositioning of the counsel tables to enhance visibility. A strip of obscure film is installed to lessen the chance of sensitive matters on counsels' tables being visible to nearby jurors.

## II. DISCUSSION

Now, on the (literal) eve of trial, after stipulating to the present trial date in September 2021, Defendant changes his tune and argues that the trial cannot go forward under the current pandemic conditions without "severely compromising" his Sixth Amendment right to a criminal jury trial. (ECF No. 78, PageID.2858.)

### A. Masking Requirements

Defendant first argues that the District's current masking requirement will prevent him from "[b]eing able to fully observe and evaluate a prospective juror" during *voir dire* and will also prevent him from "[b]eing able to visibly witness jurors' reactions and facial expressions" during trial. (*Id.*, PageID.2858.) Despite numerous trials that have occurred during the COVID-19 pandemic, Defendant can find no authority "for the proposition that the entirety of jurors' faces must be visible at all times throughout the trial." *See United States v. Trimarco*, No. 17-CR-583, 2020 WL 5211051, at *5 (E.D.N.Y. Sept. 1, 2020). All courts that have considered this question so far have universally reached the conclusion that a defendant can still assess a juror's credibility and demeanor during both *voir dire* and trial while the juror is wearing a face mask. *See, e.g., id.* (rejecting a constitutional right to a maskless jury because "Defendant's attorneys can still observe and evaluate other aspects of jurors' body language that will be fully visible during the trial"); *United States v. Crittenden*, No. 4:20-CR-7, 2020 WL 4917733, at *8 (M.D. Ga. Aug. 21, 2020) ("Of course, under normal circumstances, being able to see a potential juror's full facial expressions may be tactically preferable. But the Court is unconvinced that it is required by the Constitution. Through their review of informative juror questionnaires and questioning during *voir dire*, the parties should be able to obtain sufficient information to detect bias, disqualify jurors for cause, and exercise peremptory challenges. That is what the Constitution requires."); *United States v. Thompson*, No. CR 19-1610 MV-4, 2021 WL 2402203, at *5 (D.N.M. June 11, 2021) ("[T]he Court is aware of no authority ... holding that the Sixth Amendment right to an impartial jury or Due Process demand that the defendant have unimpeded visual access to prospective jurors' facial expressions during jury selection.... The Court believes that [defendant's] ability to ask questions during *voir dire* and to see the upper half of prospective jurors' faces is enough to satisfy his constitutional rights during jury selection."); *United States v. Tagliaferro*, No. 19-CR-472, 2021 WL 1225990, at *4 (S.D.N.Y. Mar. 31, 2021) ("As noted above, despite the District's mask mandate, [defendant] is still free to examine and assess juror credibility in all critical aspects besides the few concealed by the wearing of a mask.")

*3 While the court recognizes that the masking requirement may create some practical challenges, the court remains unconvinced that such a requirement infringes on Defendant's constitutional

rights. As sister courts have noted, Defendant still has multiple means of assessing juror credibility. The court finds that the masking requirement is not a sufficient reason to justify delaying trial further.

### B. Social Distaining Requirement

Defendant next argues that the "social distancing requirements are also likely to make it extremely difficult for Mr. Schwartz to effectively view the jury and jurors' reactions during trial." (ECF No. 78, PageID.2859.) He argues that "[w]ith jurors spread out four rows deep in and in front of the jury box, it is simply not physically possible to observe all twelve jurors' reactions simultaneously." (*Id.*)

The court is not convinced by this argument as it lacks any precedential basis. The court sees no indication that the Constitution guarantees a right permitting a Defendant to observe all jurors' reactions *simultaneously*. Furthermore, as the photographic image above demonstrates, the current arrangement is unlikely to have any material impact on the Defense counsel's ability to view jurors. The increased spacing between the jurors, and the fact that the permanent jury box is raised, means that jurors in the back rows are not likely to be obscured. To the court's eye –based in part on actually sitting in various juror and attorney positions to assess lines of sight—it appears quite possible to view all the jurors at once. In fact, the present courtroom arrangement means that Defendant (and especially his counsel arguing from the lectern) will be closer to many members of the jury than they would be in this courtroom's ordinary setup. The court finds this concern to be both factually unfounded and unsupported by precedent.

### C. COVID-19 Adjournment

Defendant next argues that "the potential impact" of a positive COVID-19 test among trial participants or the jury would be a delay and disruption of the trial that could result in prejudice against the Defendant. (*Id.*, PageID.2860.) Defendant notes the fact that at least one jury trial in the Eastern District of Michigan was temporarily suspended after a positive COVID-19 test was registered by a court staff member. (*Id.*) At the current time, however, such concerns are speculative. It cannot be denied that such a delay is possible, but the court is aware also that a number of trials have been held successfully throughout the country (and in this District) despite ongoing COVID-19 concerns. And, as explained above, the court has implemented social distancing and masking requirements to lessen the possibility that a single positive COVID-19 test among the jury will require a delay of trial. The relatively short predicted length of this trial—about a week—should also diminish such concerns because the odds of a positive case occurring during a single-week trial are smaller than in a longer proceeding. If a suspension of the trial does

occur, Defendant is free to bring a motion arguing that the delay has caused him prejudice, but the court will cross that bridge only if it comes to it.

### D. Fair Cross Section of the Community

Defendant's final objection to commencing his jury trial at this time is that "the COVID-19 pandemic has likely substantially reduced the Court's Jury Selection Plan's ability to select a meaningful cross-section of the community as required by the Sixth Amendment." (*Id.*, PageID.2861.) He argues that because "the pandemic has had a disproportionate impact on racial minorities and elderly Americans," such individuals are now more likely to "fail to heed the court's summons." (*Id.*)

**\*4** In support, Defendant cites two 2020 Colorado district court opinions. In both opinions, the court provided a number of reasons why the defendant's speedy trial rights would not be violated by a further delay. The district court, in these opinions, cited the difficulty presented by obtaining an average cross-section of the community during the pandemic as a reason supporting further delay. *See United States v. Davis*, 487 F. Supp. 3d 1068, 1070 (D. Colo. 2020); *United States v. Young*, No. 19-CR-00496-CMA, 2020 WL 3963715, at \*2 (D. Colo. July 13, 2020). The court is simply not persuaded by two now factually outdated opinions that provide only the most cursory review of the issue.

. The Supreme Court has held that "[t]he Sixth Amendment secures to criminal defendants the right to be tried by an impartial jury drawn from sources reflecting a fair cross[-]section of the community," *Berghuis v. Smith*, 130 S.Ct. 1382, 1387 (2010), but it has not held that a defendant is entitled to a jury of any particular racial or age composition. Defendant has provided merely speculation that the composition of his jury *may* be materially changed by the ongoing pandemic and provides no actual studies or statistics in support of this proposition. The Supreme Court in *Duren v. Missouri*, 439 U.S. 357, 364 (1979) provided a rather rigorous three-part test for adjudicating such jury composition claim. Such a claim "must demonstrate that (1) the group alleged to be excluded is a distinctive group in the community; (2) the representation of this group is not fair and reasonable; and (3) the underrepresentation was due to a systematic exclusion of the group in the selection process." *United States v. Smith*, 463 F. App'x 564, 571 (6th Cir. 2012) (citing *Duren*, 439 U.S. at 364). Defendant's briefing makes no effort to satisfy these three prongs.

The only support Defendant provides for his perspective are two passing comments in opinions that were written in 2020 before any COVID-19 vaccinations had been authorized for use by the public. *See Davis*, 487 F. Supp. 3d at 1070; *Young*, 2020 WL 3963715, at \*2. The situation today, with widespread availability of the COVID-19 vaccinations and a general relaxing of social

distancing requirements, is materially different than conditions in early-to-mid 2020.[4] Now that the country has moved toward a greater level of normalcy, more recent opinions have rejected such jury cross-section arguments. In *Trimarco*, for instance, the court found a similar argument was "premature at this juncture" because it lacked any specific facts on the actual composition of the jury pool. See *Trimarco*, 2020 WL 5211051, at *5.

And even if Defendant were able to show that the ongoing nature of the pandemic resulted in some small "absolute disparity" in the jury pool, that alone is not enough to sustain a valid Sixth Amendment claim. See, e.g., *Howell v. Superintendent Rockview SCI*, 939 F.3d 260, 268 (3d Cir. 2019) (pointing out that "numerous courts have [previously] noted that an absolute disparity [in jury composition] below 10% generally will not reflect unfair and unreasonable representation"); *Trimarco*, 2020 WL 5211051, at *5 (noting that "even if this case had been tried before the onset of the pandemic, older people and those with pre-existing health conditions may have been excluded from the jury anyway" because the local selection plan "permits excusal from jury duty in response to individual requests by persons over 70 years of age.") (quotations omitted). Because Defendant has failed to plausibly lay out all the elements required for a jury composition claim, see *Duren*, 439 U.S. at 364, the court also rejects this argument.

### III. CONCLUSION

*5 For the reasons explained above, the court finds that the trial should go forward as scheduled as Defendant's objection lacks merit. Accordingly,

IT IS ORDERED that "Defendant's Objection to Proceeding with Jury Trial During COVID-19 Pandemic Conditions" (ECF No. 78) is OVERRULED.

**All Citations**

Slip Copy, 2021 WL 5283948

### Footnotes

| 1 | The Order also included a blanket finding of excludable delay for purposes of the Speedy Trial Act, 18 U.S.C. § 3161. |

2   As the court has previously indicated to the parties, the court intends that any witnesses testifying will wear a face shield to ensure that all have a clear view of their face and attorneys have also been given the option of wearing a face shield while presenting.

3   According to Center for Disease Control guidelines, an individual only needs to quarantine if they are unvaccinated and have been in close contract for "with someone who has COVID-19" for "a cumulative total of 15 minutes or more over a 24-hour period." *Quarantine and Isolation*, Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/your-health/quarantine-isolation.html (last visited Nov. 10, 2021). So, this distancing greatly reduces the chance that the trial will need to be suspended if a juror tests positive.

4   As of November 1, 2021, 80 percent of adults are now vaccinated. *See* Mychael Schnell, *70% of US adults are fully vaccinated, 80% partially*, The Hill, (Nov. 1, 2021).

End of Document © 2021 Thomson Reuters. No claim to original U.S. Government Works.

Case 2:18-cr-20085-PDB-EAS ECF No. 303, PageID.1641 Filed 12/16/21 Page 16 of 19

United States v. Smith, Not Reported in Fed. Rptr. (2021)

2021 WL 5567267

2021 WL 5567267
Only the Westlaw citation
is currently available.
United States Court of
Appeals, Sixth Circuit.

UNITED STATES of
America, Plaintiff-Appellee,
v.
Charles Ray SMITH,
Defendant-Appellant.

No. 21-5432
|
FILED November 29, 2021

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF TENNESSEE

**Attorneys and Law Firms**

Matthew J. Wilson, Office of the U.S. Attorney, Jackson, TN, for Plaintiff-Appellee.

Stephen R. Leffler, Law Office, Memphis, TN, for Defendant-Appellant.

Before: CLAY, DONALD, and NALBANDIAN, Circuit Judges.

OPINION

BERNICE BOUIE DONALD, Circuit Judge.

*1 After a five-day trial in September 2020, a jury convicted Charles Smith of one count of conspiracy to commit bank fraud, in violation of 18 U.S.C. § 371, and seven counts of aiding and abetting bank fraud, in violation of 18 U.S.C. §§ 1344 and 2. Like many courts conducting in-person trials during the global COVID-19 pandemic, the United States District Court for the Western District of Tennessee implemented several safety measures to mitigate the potential spread of the virus during Smith's trial, including requiring jurors to wear face masks over their noses and mouths. On appeal, Smith argues that the district court's face mask requirement violated his right to a fair trial because it prevented him from seeing jurors' full facial expressions during opening statements, closing arguments, and witness testimony. For the following reasons, we do not find that the district court committed reversible error and therefore affirm Smith's convictions.

We start with the axiomatic principle that a defendant is entitled to "a fair trial, not a perfect one, because an error-free, perfect trial is not humanly possible." *United States v. Segines*, 17 F.3d 847, 851 (6th Cir. 1994) (citations and internal quotation marks omitted). This principle applies with even greater force during a public health emergency, where protective measures such as plexiglass partitioners, disposable microphones, face masks, and social distancing upend traditional notions of what a "normal" trial looks like. However, different does not necessarily mean unfair.

Throughout Smith's trial, the district court required all trial participants and attendees, including jurors, to wear opaque masks that covered the lower half of their faces. There were limited exceptions to this rule, including that witnesses could remove their masks when testifying, attorneys could remove their masks

Case 2:18-cr-20085-PDB-EAS ECF No. 303, PageID.1642 Filed 12/16/21 Page 17 of 19

United States v. Smith, Not Reported in Fed. Rptr. (2021)
2021 WL 5567267

when addressing the jury, and prospective jurors could remove their masks and put on a clear face shield when responding to questions during *voir dire*. Seeking to expand these exceptions, Smith's counsel filed a pretrial motion arguing that Smith would be prejudiced if he could not observe jurors' facial reactions to the evidence or lawyers' arguments. As a compromise, he proposed that jurors could instead wear face shields and that any prospective jurors who were uncomfortable removing their masks be dismissed for cause. Smith's counsel later asked jurors about this compromise during *voir dire*, and none of them objected to removing their face masks and wearing only a face shield during trial.

The district court nonetheless denied Smith's motion and refused to alter its face mask protocol. It reasoned that public health exigencies caused by the COVID-19 pandemic outweighed the minimal potential prejudice Smith would suffer if he could not see the lower half of jurors' faces during trial. Having sought guidance from the Centers for Disease Control and Prevention ("CDC"), Cleveland Clinic, and other compelling academic research, the district court further concluded that face shields alone are not an adequate substitute for face masks to prevent the spread of COVID-19. The jury ultimately convicted Smith and this appeal followed.

**\*2** The overarching issue presented on appeal is whether the district court violated Smith's constitutional right to a fair trial by requiring jurors to wear masks during witness testimony, opening statements, and closing arguments, even when those jurors expressed a willingness to proceed without masks. We note that trial courts have inherent authority, and even "grave responsibility," to determine what safety measures are necessary to protect the judge, court personnel, the parties, the lawyers, the jurors, and the audience in and around the courtroom. See *Morgan v. Bunnell*, 24 F.3d 49, 51 (9th Cir. 1994). As a result, we believe the proper inquiry here is whether the district court abused its discretion, and thereby denied Smith his right to a fair trial, when it determined that public health considerations outweighed Smith's interests in viewing jurors' full faces during the trial. However, as tempting as it may be for us to decide Smith's claim of constitutional error, we decline his invitation to do so because we can resolve his appeal on narrower grounds. See *United States v. Askaraov*, 299 F.3d 896, 898 (6th Cir. 2002).

Let us assume *arguendo* that the district court abused its discretion by imposing the jury face mask requirement, and that error rose to the level of a constitutional violation. We would next need to determine the appropriate standard of review. Where, as here, the defendant properly objects to "[a]ny error, defect, irregularity or variance" at trial, we will normally disregard the error on direct appeal and allow his conviction to stand unless we determine that the error affected his "substantial rights." Fed. R. Crim. P. 52(a). The purpose of this "harmless error" rule is to avoid "setting aside convictions for small errors or defects that have little, if any, likelihood of having changed the result of the trial." *Chapman v. California*, 386 U.S. 18, 22 (1967).

Although the harmless error rule applies to most constitutional violations, *United*

Case 2:18-cr-20085-PDB-EAS ECF No. 303, PageID.1643 Filed 12/16/21 Page 18 of 19
United States v. Smith, Not Reported in Fed. Rptr. (2021)
2021 WL 5567267

States v. Hastings*, 461 U.S. 499, 508-09 (1983), there is a "highly exceptional category" of fundamental constitutional errors that are not subject to harmless-error analysis "because they undermine the fairness of a criminal proceeding as a whole." *United States v. Davila*, 569 U.S. 597, 611 (2013) (citation omitted). These structural errors "are so intrinsically harmful" that they "require automatic reversal" of conviction regardless of whether they actually prejudiced the defendant or affected the outcome of the proceeding. *Neder v. United States*, 527 U.S. 1, 7 (1999); *United States v. Lawrence*, 735 F.3d 385, 401 (6th Cir. 2013). However, given the "strong presumption" that constitutional errors are subject to harmless-error analysis, *Rose v. Clark*, 478 U.S. 570, 579 (1986), the Supreme Court has found structural errors only in a "very limited class of cases," including where there was a complete denial of counsel, a biased trial judge, racial discrimination in the selection of the grand jury, a denial of self-representation at trial, a denial of a public trial, and a defective reasonable-doubt instruction. *Neder*, 527 U.S. at 8 (collecting cases).

Smith argues that the denial of his right to observe jurors' full faces during trial was a structural error and is therefore subject to automatic reversal rather than harmless-error analysis. We disagree. As an initial matter, Smith cites no authority (nor are we aware of any) holding that defendants have a constitutional right to see jurors' uncovered facial expressions during trial. While we are not deciding whether Smith does, in fact, have that right, this lack of authority certainly undercuts any assertion that requiring jurors to wear face masks during trial is a fundamental constitutional error that "transcends the criminal process." *Arizona v. Fulminante*, 499 U.S. 279, 311 (1991).

It is also important to keep in mind that "the defining feature of a structural error is that it 'affect[s] the framework within which the trial proceeds,' rather than being 'simply an error in the trial process itself.' " *Weaver v. Massachusetts*, 137 S.Ct. 1899, 1907-08 (2017) (quoting *Fulminante*, 499 U.S. at 310). We do not find that the district court's safety protocols, which it implemented after seeking guidance from the CDC and Cleveland Clinic, deprived Smith of "basic protections" such that his criminal trial could not reliably serve as a vehicle for determining whether he was guilty or innocent. See *Rose*, 478 U.S. at 577. Nor are we persuaded that the alleged error at issue here—requiring jurors to wear face masks in the courtroom during a global pandemic—rises to the level of a structural error merely because jurors expressed a willingness to wear face shields instead. The jurors were not the only individuals in the courtroom, and even Smith conceded in his brief that face masks provide the best protection against COVID-19.

**\*3** Notably, Smith also contends that the right to see jurors' facial expressions during trial "is on ... par with the right to confront the witnesses for the prosecution." This argument is quite a stretch, particularly given that the right to confront adverse witnesses is explicit in the Constitution, U.S. Const. amend. VI, and the alleged right to observe jurors' noses and mouths during trial is not. In any event, we can at least agree that seeing jurors' faces

Case 2:18-cr-20085-PDB-EAS ECF No. 303, PageID.1644 Filed 12/16/21 Page 19 of 19
United States v. Smith, Not Reported in Fed. Rptr. (2021)
2021 WL 5567267

during trial is not *more* important than the rights established by the Confrontation Clause, and it is well settled that the denial of face-to-face confrontation is not a structural error and is instead subject to harmless-error analysis. *Coy v. Iowa*, 487 U.S. 1012, 1021 (1988); *see also Reiner v. Woods*, 955 F.3d 549, 555 (6th Cir. 2020). Accordingly, we would review the district court's face mask requirement only for harmless error.

An error is harmless, and does not warrant reversal, if the government can show "beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." *Chapman*, 386 U.S. at 24. Here, the government argues that the district court's face mask requirement did not unfairly prejudice Smith because it applied with equal force to both parties. Moreover, there is absolutely nothing in the record suggesting that the jury's verdict may have been different if Smith could have seen jurors' full facial expressions during trial. We are therefore convinced that the district court's alleged error, to the extent it was an error at all, was harmless. For these reasons, Smith's convictions are **AFFIRMED**.

**All Citations**

Not Reported in Fed. Rptr., 2021 WL 5567267

---

End of Document © 2021 Thomson Reuters. No claim to original U.S. Government Works.