UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

v.

D2-MICHAEL DAVIS

        Defendant.

Case No.: 18-cr-20085-02

HON. PAUL D. BORMAN
United States District Judge

## GOVERNMENT'S SENTENCING MEMORANDUM

Michael Davis had several nicknames. His Facebook name was "Marlo Standsfield," fashioned after the murderous drug dealer on the HBO series The Wire. Another one of his nicknames, "Killa," needed no explanation. On December 29, 2019, shortly after 7:00 p.m., Davis lived up to his nicknames when he carried out the brazen murder-for-hire of Deangelo Pippen at a major intersection in Norton Shores.

Davis is no stranger to the criminal justice system; he has multiple prior felony convictions including convictions for drug dealing and illegal firearms possession. The sentences imposed in these cases had no deterrent effect on Davis as he murdered Pippen while on parole.

As explained below, the government requests that the Court sentence Davis to 30 years' imprisonment, the agreed-upon term in the Rule 11 Plea Agreement. In short, a sentence of 30 years is sufficient but not greater than necessary to satisfy the aims of sentencing.

## STATEMENT OF FACTS

On December 29, 2016, Deangelo Pippen was murdered in Norton Shores, Michigan. Norton Shores is on the west side of Michigan near Muskegon, approximately three hours from Detroit. Law enforcement officers responded to the scene of the murder (an intersection on a major thoroughfare) and found Pippen shot to death in a vehicle. Pippen had been driving alone when an SUV pulled alongside his car and individuals from the SUV opened fire, striking Pippen multiple times, killing him.


*Pippen deceased in his vehicle*


*Shooting Scene with marked casings*




*Pippen's vehicle showing bullet impact and trajectory*   *Pippen's vehicle showing bullet impact*

In December 2016, Dwight Williams hired Michael Davis to murder Pippen. Williams and Pippen knew each other from the drug trade in Muskegon. After being hired by Williams, Michael Davis recruited Christopher Davis and David Allen to assist in the murder.

On December 22, 2016, Michael Davis and Dwight Williams met at Fatboyz, a restaurant on 7 Mile Road in Detroit, operated by Williams. While there, Williams gave Davis a down-payment for the murder.

The next day, Michael Davis, accompanied by Christopher Davis, with the assistance of a third-party, rented a GMC Terrain to use in the murder. The Terrain was equipped with GPS, which law enforcement later secured.

On December 28, 2016, the Davises and Allen drove the Terrain from Detroit to Norton Shores to murder Pippen. Dwight Williams followed in another vehicle. Once in Norton Shores, the Davises and Allen met with Dwight Williams, who provided them firearms to use in the murder. The Davises and Allen then

drove around searching for Pippen, including driving to Pippen's residence at the Tiffany Woods Apartments. (The blue dots are GPS pings from the Terrain).



Unable to locate Pippen, the group decided to spend the night at a hotel in Grand Rapids. The next day, the Davises and Allen drove back to Norton Shores to look for Pippen again. Once in Norton Shores, the three returned to Pippen's residence and waited in the Terrain outside of Pippen's apartment for several hours.





While the group waited for Pippen to leave his residence, Michael Davis and David Allen communicated via cell phone with Dwight Williams, who was back in Detroit. In turn, Dwight Williams was communicating with Deangelo Pippen to confirm his whereabouts.

| Eastern Standard Time (EST) | Associated Phone Number | Date | Duration | Direction | Calling Number | Called Number | Switch Name |
|---|---|---|---|---|---|---|---|
| 12/29/16 2:08 PM | Michael Davis | 12/29/2016 | 16 | Outgoing | Dwight Williams | Michael Davis | Philadelphia, PA |
| 12/29/16 2:08 PM | David Allen | 12/29/2016 | 25 | Outgoing | Dwight Williams | David Allen | Philadelphia, PA |
| 12/29/16 2:24 PM | David Allen | 12/29/2016 | 51 | Outgoing | Dwight Williams | David Allen | Philadelphia, PA |
| 12/29/16 2:41 PM | David Allen | 12/29/2016 | 61 | Incoming | David Allen | Dwight Williams | Philadelphia, PA |
| 12/29/16 2:43 PM | Deangelo Pippen | 12/29/2016 | 167 | Outgoing | Dwight Williams | Deangelo Pippen | Philadelphia, PA |
| 12/29/16 2:47 PM | David Allen | 12/29/2016 | 53 | Outgoing | Dwight Williams | David Allen | Philadelphia, PA |
| 12/29/16 2:54 PM | David Allen | 12/29/2016 | 40 | Incoming | David Allen | Dwight Williams | New York |
| 12/29/16 4:50 PM | David Allen | 12/29/2016 | | Incoming | David Allen | Dwight Williams | Philadelphia, PA |
| 12/29/16 6:02 PM | David Allen | 12/29/2016 | 4 | Outgoing | Dwight Williams | David Allen | Carolina |
| 12/29/16 6:08 PM | David Allen | 12/29/2016 | | Incoming | David Allen | Dwight Williams | Carolina |
| 12/29/16 6:08 PM | David Allen | 12/29/2016 | | Incoming | David Allen | Dwight Williams | Carolina |
| 12/29/16 6:09 PM | David Allen | 12/29/2016 | 128 | Outgoing | Dwight Williams | David Allen | Carolina |
| 12/29/16 6:11 PM | Deangelo Pippen | 12/29/2016 | 263 | Outgoing | Dwight Williams | Deangelo Pippen | Carolina |
| 12/29/16 6:19 PM | Deangelo Pippen | 12/29/2016 | 50 | Outgoing | Dwight Williams | Deangelo Pippen | Carolina |
| 12/29/16 6:22 PM | Deangelo Pippen | 12/29/2016 | 137 | Incoming | Deangelo Pippen | Dwight Williams | Carolina |
| 12/29/16 6:49 PM | David Allen | 12/29/2016 | | Outgoing | Dwight Williams | David Allen | CRTAS001 |
| 12/29/16 7:17 PM | David Allen | 12/30/2016 | 33 | Incoming | David Allen | Dwight Williams | CRTAS001 |
| 12/29/16 7:26 PM | David Allen | 12/30/2016 | 13 | Incoming | David Allen | Dwight Williams | CRTAS001 |

Eventually, at approximately 7:17 p.m., Pippen left his apartment and the group followed him in the Terrain to a nearby intersection. When they reached the intersection, the Davises opened fire on Pippen, shooting him several times. Pippen drove his car a short distance, crashed into a garage, and died a few minutes later.

After the murder, the group drove back to Detroit. Once there, Michael Davis met up with Dwight Williams at Fatboyz where Williams paid Davis for murdering Pippen. Michael Davis then paid Christopher Davis and David Allen for their roles in the murder.

## PROCEDURAL HISTORY

On February 7, 2018, a grand jury returned an Indictment against Michael Davis and his three co-defendants, Christopher Davis, David Allen, and Dwight Williams for the murder-for-hire of Pippen. On January 14, 2022, a Third Superseding Information was filed charging Michael Davis with Count 1 – conspiracy to use interstate commerce facilities in the commission of murder-for-

hire resulting in personal injury, in violation of 18 U.S.C. § 1958(a); and Count 2 – use of interstate commerce facilities in the commission of murder-for-hire resulting in personal injury, in violation of 18 U.S.C. § 1958(a) and 2. On the same day, Michael Davis pleaded guilty pursuant to a Rule 11 plea agreement to the two counts contained in the Third Superseding Information. The plea agreement calls for a combined sentence of 30 years' imprisonment.[1]

## ADVISORY GUIDELINE RANGE

The Probation Department calculated the applicable guideline imprisonment range at 360 months to life, (PSR ¶ 89), based on an offense level of 41 and a criminal history category of VI. However, because the combined statutory maximum sentence for Count 1 and Count 2 is 480 months, the Probation Department calculated the guideline range at 360 to 480 months. The government agrees with the Probation Departments' calculations.

---

[1] The plea agreement here is to one count of conspiracy to commit murder-for-hire *resulting in personal injury* and one count of murder-for-hire *resulting in personal injury,* both 20-year felonies, rather than murder-for-hire *resulting in death*. Although death resulted in this case, any plea to murder-for-hire resulting in death would have required a mandatory life sentence. Further, the government did not view a plea under 18 U.S.C. 924(j) under counts two or four as viable options in a negotiated plea because it carries, however small, a degree of litigation risk if in the future a court were to determine that murder-for-hire resulting in death is not a crime of violence. Consequently, if the Court accepts the Rule 11 plea agreement, it should apportion the 30 years between the two counts of conviction and run them consecutively to each other. The government suggests that the Court sentence Davis to 20 years on the substantive count and 10 years on the conspiracy.

## SECTION 3553(a) FACTORS

Through 18 U.S.C. § 3553(a) Congress provided the relevant objectives and factors to be considered by sentencing courts in imposing a "sentence sufficient, but not greater than necessary." Those objectives are: (1) the nature and circumstances of the offense, and the history and characteristics of the defendant; (2) the need for a sentence to reflect the basic aims of sentencing (including retribution, deterrence, and rehabilitation); (3) the kinds of sentences legally available; (4) the Sentencing Guidelines; (5) Sentencing Commission policy statements; (6) the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need for restitution. These factors support a sentence of 30 years' imprisonment. A prison sentence of 30 years will protect the public, reflect the seriousness of the offense, and provide just punishment.

1. *The nature and circumstances of the offense, and the history and characteristics of the defendant*

As discussed above, the conduct that led to Michael Davis' convictions involved the murder of Deangelo Pippen. The nature and circumstances of the offenses are appalling. Michael Davis was a "trigger puller" in Pippen's murder; the murder was meticulously premeditated; and Michael Davis recruited Christopher Davis, who was only 20 years old at the time, to assist in the murder. Michael Davis and his accomplices drove over three hours to murder Pippen, and

when they couldn't find him, stayed overnight in a hotel, and began hunting Pippen again the next day. And on the evening of the murder, Michael Davis and two of his accomplices waited outside of Pippen's apartment for over three hours. When Pippen did come out, Davis and his accomplices followed him to a busy intersection, where they murdered him. In other words, Michael Davis had an abundance of time to consider the gravity of his actions and back out—he didn't. Further, Michael Davis murdered Pippen even though he had no quarrel with him. In fact, Michael Davis didn't even know him, which highlights the fact that Davis committed the murder for one reason – greed.

The murder of Pippen was just one in a long list of crimes committed by Michael Davis. His criminal history is abysmal. By the time he murdered Pippen, Davis had already accumulated the following felony convictions:

- *2006* – Attempt delivery cocaine less than 50 grams (PSR ¶ 37).
- *2007* – Delivery cocaine less than 50 grams (PSR ¶ 38).
- *2008* – Felon in possession of a firearm/breaking and entering (PSR ¶ 42).
- *2009* – Delivery cocaine less than 50 grams (PSR ¶ 46).
- *2011* – Fleeing and eluding a police officer – fourth degree (PSR ¶ 49).
- *2013* – Felon in possession of a firearm; carrying a concealed weapon; and assaulting/resisting/obstructing a police officer (PSR ¶ 50).

Davis has repeatedly violated previous terms of probation and parole and has committed criminal offenses while under court supervision. In fact, at the time he murdered Pippen, Davis was on parole for firearms offenses. (PSR ¶¶ 50, 53).

Davis was also a convicted felon and ineligible to possess a firearm. However, that did not stop him from using a firearm to murder Pippen.

   2. *The need for a sentence to reflect the basic aims of sentencing (including retribution, deterrence, protection of the public, and rehabilitation)*

A 30-year prison sentence will reflect the essential goals of sentencing. A sentence of that length emphasizes the serious nature of the offenses, and it will justly punish Michael Davis for his crimes. It will deter Davis from committing further criminal acts, such as murder or attempted murder, for a significant period. A 30-year prison sentence will also potentially have a deterrent effect on others, including associates of Davis, by sending a message that this type of criminal behavior will lead to substantial incarceration. A 30-year prison sentence will also protect the public from Davis.

   3. *The kinds of sentences legally available*

The Court may sentence Michael Davis to a term of incarceration up to the combined statutory maximum of 40 years. The Rule 11, however, specifically calls for a sentence of 30 years imprisonment.

   4. & 5. *The Sentencing Guidelines and policy statements*

As mentioned, the sentencing guidelines in this case are 360 – 480 months. There are no pertinent policy statements in the Guidelines.

> 6. *The need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct*

The Court's sentence must avoid unwarranted disparities among similarly situated defendants. Under the circumstances of Michael Davis' case, a sentence of 30 years for the charged offenses would not result in an unwarranted disparity among those defendants similarly situated to Michael Davis.

> 7. *The need for restitution*

The Court should order restitution for the counts of conviction.

## CONCLUSION

Michael Davis is a murderer who poses a profound danger to the community. Given his active participation as a shooter in the charged incidents, his criminal history, and his inability to conform his conduct to the dictates of the law, there is only one sentencing alternative: a protracted term of incarceration. Considering the §3553(a) factors, the government requests that the Court sentence Davis to 30 years' (10 years on Count 1 and 20 years on Count 2, consecutive to Count 1), followed by a three-year term of supervised release.

        Respectfully submitted,

        DAWN N. ISON
        United States Attorney

        *s/ Mark Bilkovic*
        Mark Bilkovic
        Assistant United States Attorney
        211 W. Fort Street, Suite 2001
        Detroit, MI  48226
        Mark.bilkovic@usdoj.gov
        (313) 226-9623
        P48855

Dated: June 10, 2022

## CERTIFICATE OF SERVICE

I hereby certify that on June 10, 2022, the foregoing document was electronically filed with the Clerk of the Court using CM/ECF, for uploading and service by electronic notice to counsel and parties authorized to receive electronically Notices of Electronic Filing

*s/ Mark Bilkovic*
Mark Bilkovic
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, MI  48226
Mark.bilkovic@usdoj.gov
(313) 226-9623
P48855